UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEATHER N. JORDAN MANIFOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00672-TWP-MPB |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Heather N. Jordan Manifold ("Manifold"), requests judicial review of the final

decision of the Commissioner of the Social Security Administration (the "Commissioner"),

denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the

Commissioner.

## I.    BACKGROUND

### A.    Procedural History

On May 18, 2012, Heather Manifold protectively filed an application for SSI, alleging a

disability on-set date of August 1, 2010, due to mood disorder, anxiety disorder, borderline

personality disorder, post-traumatic stress disorder ("PTSD"), and mental incapacity. Her claim

was initially denied on June 28, 2012, and again on reconsideration on September 6, 2012.

Manifold filed a written request for hearing on October 18, 2012. On October 10, 2013, a hearing

was held before Administrative Law Judge James R. Norris ("ALJ"). Manifold was present and

represented by counsel. A medical expert, James M. Brooks, Ph.D. ("Dr. Brooks"), a licensed

clinical psychologist, and a vocational expert, Constance Brown, certified rehabilitation counselor,

appeared and testified at the hearing. On November 27, 2013, the ALJ denied Manifold's

application for SSI. Following this decision, Manifold requested review by the Appeals Council

on January 21, 2014. On March 2, 2015, the Appeals Council denied Manifold's request for review

of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner

for purposes of judicial review. On April 27, 2015, Manifold filed this action for judicial review

of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.**     **Factual Background**

Manifold was born in February 1983. At the time of her alleged disability on-set, she was

27 years old, and she was 30 years old at the time of the ALJ's decision. Beginning in grade four,

Manifold participated in special education courses and she completed school through the eighth

grade. She attempted the GED examination three times but failed to pass each time. Prior to the

on-set of her alleged disability, she had an employment history that included various jobs such as

a housekeeper, but she did not hold any job for an extensive period of time because employers told

her that she was too slow or not qualified.

In 2006, Manifold underwent a psychological examination for a previous Social Security

benefits application. She reported that she had received benefits as a minor. The Wechsler Adult

Intelligence Scale-III was administered, and she scored 76 for verbal IQ, 86 for performance IQ,

and 79 for full scale IQ (Filing No. 12-7 at 5). These scores put her in the borderline to low average

range of functioning. Her global assessment of functioning ("GAF") score was listed as 54 (Filing

No. 12-7 at 5).

Manifold was first diagnosed with depression in 2008 and was later diagnosed with bipolar

disorder in 2009. She was documented as having speech impediments, including stuttering.

During a 2010 psychiatric evaluation by Masooma Sheikh, M.D. ("Dr. Sheikh"), Manifold was

diagnosed with borderline personality disorder and "rule out" bipolar disorder and "rule out" post-traumatic stress disorder.  (*Id.*). Some of the symptoms that she reported included sleeplessness, loss of appetite, weight loss, and periods of energy that ended in being depressed.  She reported witnessing her mother being physically abused by her father, and she also reported being molested by her stepfather.  At the end of her psychiatric evaluation, Dr. Sheikh assigned her a GAF score of 27. Her prescription for Topamax was increased, and she was prescribed Remeron.  Dr. Sheikh recommended holding off on her Xanax.

Manifold continued to receive counseling throughout 2010 and 2011.  She reported that she needed less Xanax after her counseling sessions. (Filing No. 12-7 at 10).  At a follow-up appointment with Dr. Sheikh, she reported feeling better after her medications were adjusted although she experienced some negative side effects.  It was noted that she continued to exercise poor judgment and insight.  During her next two appointments, Manifold reported that she was taking her medications but was feeling worse and depressed, had an eating disorder, and was experiencing weight loss and motor ticks in her neck and face.  Her medications were adjusted to address her issues.

During her next follow-up examination, Manifold reported that one of her medications was making her feel tired and that she was still having motor ticks.  (Filing No. 12-7 at 29).  She also reported being worried about her weight, but mentioned no depression.  Her next follow-up was more positive because her ticks had improved, she had a good appetite, and she was maintaining her weight.  At later appointments with Dr. Sheikh, Manifold reported mood swings, crying spells, and less energy, but improved concentration.  By the time she applied for disability benefits, Manifold was diagnosed with PTSD, "rule out" bipolar, "rule out" anorexia, attention deficit hyperactivity disorder ("ADHD"), and borderline personality disorder, with the continued GAF

score of 27.  At another follow-up appointment, Manifold reported feeling "okay" on her medications and not having anxiety.  (Filing No. 12-7 at 40).  Her mood was stable.

In June 2012, Donna Unversaw, Ph.D. ("Dr. Unversaw"), a state agency medical consultant, completed a mental residual functional capacity assessment and opined that Manifold had only moderate limitations in understanding, remembering, and carrying out detailed instructions (Filing No. 12-7 at 54).  Dr. Unversaw also wrote that Manifold was not significantly limited in many other areas such as the ability to understand and remember very short and simple instructions.  She opined that Manifold could complete simple, routine, unskilled work.  Dr. Unversaw also completed a psychiatric review technique form for Manifold (Filing No. 12-7 at 58).  She indicated that Manifold's primary impairment was anxiety.  Dr. Unversaw also opined that Manifold has "[i]nflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by . . . [i]ntense and unstable interpersonal relationships and impulsive and damaging behavior." (Filing No. 12-7 at 65.)  Dr. Unversaw determined that Manifold had only mild restrictions in activities of daily living and moderate limitations in social functioning and concentration, persistence, and pace.  She noted no episodes of decompensation (Filing No. 12-7 at 68).  Benetta Johnson, Ph.D. ("Dr. Johnson"), affirmed Dr. Unversaw's assessment and noted Manifold's good attention and concentration and no memory concerns (Filing No. 12-7 at 84).

Manifold's next visits with Dr. Sheikh in June, July, and August 2012, showed a variation of her suffering from mood swings, poor appetite, and sleeplessness to her feeling better and more functional with her medication.

Manifold underwent a psychological consultative examination by Michael O'Brien, Psy.D. ("Dr. O'Brien") on June 26, 2013, as part of the disability determination process.  Manifold

reported to Dr. O'Brien that her main areas of concern were her bipolar disorder, anxiety, depression, and trouble concentrating (Filing No. 12-7 at 85).  She reported that she had a history of PTSD, and she discussed her struggles with education.  Manifold reported that her medication is helpful.  Dr. O'Brien noted that Manifold demonstrated no problems in the area of attention and distractibility and that she was calm and cooperative.  She had only a moderate number of errors on the mental status examination.  Dr. O'Brien diagnosed Manifold as having anxiety and bipolar disorder with post-traumatic traits.  He noted "rule out" borderline intellectual functioning and assigned Manifold a GAF score of 55 to 65 depending on the rule out.  Dr. O'Brien also opined that Manifold could understand, remember, and carry out simple directions and concentrate well enough to carry out simple tasks (Filing No. 12-7 at 91).

On July 1, 2013, Dr. O'Brien completed a medical source statement for Manifold and noted that her ability to understand, remember, and carry out instructions was moderately to markedly limited for simple instructions and tasks and markedly to extremely limited for complex instructions.  He qualified this opinion "depending on IQ." (Filing No. 12-7 at 94.)

During the hearing before the ALJ on October 10, 2013, Dr. Brooks testified that Manifold had a medically determinable mental impairment, pointing to her IQ scores, which were established before her disability on-set date.  He also testified regarding Manifold's symptoms, treatment and her diagnoses.  Dr. Brooks noted several inconsistencies between the diagnoses and symptoms in the record; however, he attributed these discrepancies to Manifold's borderline personality disorder.  He testified that Manifold's conditions coupled with borderline personality disorder could be better attributed to mood disorder and not necessarily bipolar disorder.  Regarding Manifold's mental functional capacity, Dr. Brooks believed that, she could perform simple, repetitive tasks.

Dr. Brooks then was questioned by Manifold's attorney about her social limitations. Dr. Brooks testified that Manifold's social interaction with the general public, co-workers, and supervisors might be moderately limited, and these interactions should be only occasional. Dr. Brooks testified that Manifold should not have difficulty with production based or fast-paced work. He questioned the current validity and usefulness of her IQ scores because IQ testing must be done multiple times over time to be reliable and useful. Dr. Brooks also discredited Dr. Sheikh's assignment of a GAF score of 27 to Manifold, because a score that low would indicate a patient required hospitalization, which Manifold did not require. Dr. Brooks testified that Dr. Sheikh likely just repeated the initial low GAF score throughout his records without actually reevaluating and updating Manifold's GAF score during subsequent visits. The low score also was inconsistent with Manifold's other GAF scores which were in the 50s range. Dr. Brooks reiterated that Manifold should be limited to simple, repetitive tasks with only occasional contact with the general public, co-workers, and supervisors.

During the administrative hearing, Manifold testified regarding her special education courses in school and that she dropped out of school in the ninth grade because "it got too difficult." (Filing No. 12-2 at 46.) She attempted the GED test three times without success. She testified that she has trouble understanding what she reads and usually has her father read to her. However, she also testified that she can fill out paperwork.

Manifold testified that her bipolar disorder is managed on her medications, but she still struggles with paying attention and with her motor ticks. She testified that her doctor prescribed new medications and increased the dosage of her old medications. She explained the medications affect her driving, so she does not drive often. Manifold testified that she does not like being around people because it makes her feel anxious and nervous. Her PTSD also makes her feel

paranoid and fearful.  However, Manifold asserted that she does not want to hurt herself or anyone else because she is not violent and she loves herself and her children too much to do something like that.  She testified that she feels tired and has racing thoughts.

In response to the ALJ's hypothetical of a person able to perform only simple, repetitive tasks with only occasional contact with the general public, co-workers, and supervisors, the vocational expert, testified that jobs were available in the national economy for such a hypothetical person such as housekeeper/cleaner, office machine operator, and electronic assembler.  She testified that each of these jobs were light, unskilled jobs.  She also testified that if the hypothetical person could not work eight hours a day and five days a week then the jobs would no longer be available.

Manifold's attorney asked the vocational expert whether any of the jobs would be eliminated if the hypothetical person had trouble reading.  The vocational expert testified that limitation would eliminate only the office machine operator.  Manifold's attorney expanded the hypothetical again to a person who had to be reminded to stay on task and needed to work in isolation.  The vocational expert indicated that these limitations would eliminate all positions except for a nighttime housekeeper.  The final limitations that Manifold's attorney posed to the vocational expert were that the person would be off task twenty percent of the day and would be absent two days a month, to which the vocational expert responded that these limitations would eliminate all jobs in the economy.

## II.    DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps.  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R.

§ 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the court reviews an ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700

9

(7th Cir. 2004).

### III.    THE ALJ'S DECISION

The ALJ began the five-step analysis and first determined that Manifold had not engaged in substantial gainful activity since May 18, 2012, the application date.  At step two, the ALJ found that Manifold has the following severe impairments: mood disorder, anxiety disorder, borderline personality disorder, and post-traumatic stress disorder.  At step three, the ALJ concluded that Manifold does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Manifold has a RFC to perform "a full range of work at all exertional levels but with the following non-exertional limitations: limited to simple, repetitive tasks and occasional contact with the public, co-workers and supervisors." (Filing No. 12-2 at 21.) At step four, the ALJ found that Manifold has no past relevant work.  At step five, the ALJ determined that Manifold is not disabled because there are jobs that exist in significant numbers in the national economy that Manifold could perform, considering her age, education, past work experience, and RFC.  Therefore, the ALJ denied Manifold's application for SSI because she is not disabled.

### IV.    DISCUSSION

In her request for judicial review, Manifold argues that the ALJ's decision contains two errors that warrant remand.  First, she argues that the ALJ did not sufficiently question the vocational expert because the ALJ did not address in the hypothetical that Manifold had limitations in concentration, persistence, and pace.  Second, the ALJ did not take into account Manifold's

unstable work history when he found that she was not disabled.  The Court will address each of these arguments in turn.

**A.  The ALJ Adequately Addressed Manifold's Limitations When He Questioned the Vocational Expert**

Manifold first argues that the ALJ failed to include in the hypothetical question her moderate limitations in concentration, persistence, and pace.  Manifold asserts that the ALJ selectively cited the record when he found that she had only mild difficulties in concentration, persistence, and pace.  Furthermore, she alleges that the ALJ omitted all evidence from her treating physician, family members, and a state agency reviewer concerning her limitations.  She asserts that the ALJ simply made his decision based on the fact that she had made improvements; and failed to consider that her symptoms often would come back after improvements were made.  Manifold also argues that the ALJ and the medical expert, Dr. Brooks, never mentioned her ADHD diagnosis, leaving her to wonder if the entire record was considered.  Finally, Manifold argues the ALJ's finding that she does not have memory problems is a misrepresentation of the entire record.

Citing several Seventh Circuit cases, Manifold argues that the ALJ must provide a complete picture of the claimant's limitations to the vocational expert.  *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  She asserts that the ALJ must include all limitations supported by medical evidence in the record, citing to *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004).  Otherwise, she states, there must be some evidence in the record to show that the vocational expert knew of the claimant's limitations.  *Id.*  Finally, she argues that the ALJ must expressly refer to concentration, persistence, and pace in the hypothetical presented to the vocational expert, citing *O'Connor-Spinner*, 627 F.3d at 620–21.

In response to Manifold's argument, the Commissioner asserts that the ALJ's hypothetical to the vocational expert was sufficient.  The Commissioner explains that at Step Three of the disability analysis, the ALJ found that Manifold had only moderate limitations in social functioning and mild limitations in activities of daily living and concentration, persistence, and pace, which findings were supported by substantial evidence, including Dr. O'Brien's opinion, Manifold's lack of memory problems, and her treatment notes from appointments with Dr. Sheikh.

The Commissioner also argues that, in the RFC analysis, the ALJ accounted for Manifold's subjective complaints as to the duration, frequency, and intensity of her impairments as well as her ADHD.  The Commissioner points to examples of evidence that the ALJ relied on to support the ALJ's RFC determination—improved concentration with ADHD medication, mental status examinations within normal limits, and Dr. Sheikh's medical notes that her concentration was good and fair.  The Commissioner asserts that the ALJ considered the entire record when he made the determination that Manifold's symptoms and ADHD improved with treatment and medications.  Dr. Sheikh and Dr. Brooks both opined that she had mild limitations, and the ALJ gave great weight to Dr. Brooks' opinion because it was heavily supported by the record.  The ALJ also considered Dr. Unversaw's opinion that Manifold could perform simple, repetitive tasks.

The Commissioner further responds that Manifold's claims that the ALJ selectively cited the record and the decision grossly misrepresented the record are simply incorrect.  Instead, the ALJ considered the record as a whole, looking at the treatment history of Dr. Sheikh, the ADHD diagnosis and notes regarding concentration, Dr. O'Brien's opinions and conditional opinions, Dr. Unversaw's mental examination and mental RFC assessment, and Dr. Brooks' full record review and opinions.  The ALJ then assigned weight to the various opinions and testimony based on their

support in the record. The ALJ's Step Three, Step Five, and RFC analyses show that the review and analysis of the record was not perfunctory or selective.

The Commissioner points out that Dr. Unversaw provided an opinion regarding Manifold's limitations (including in the area of concentration) and then converted that opinion into an RFC of an ability to perform simple, repetitive tasks. Dr. Johnson affirmed this assessment. Then Dr. Brooks, during the administrative hearing, agreed with this opinion, offering it as an appropriate RFC. The ALJ then adopted this RFC as his own. Therefore, the Commissioner asserts, there is substantial evidence in the record to support the extent of Manifold's limitations and the corresponding RFC as determined by the ALJ. What is more, the vocational expert, was present during the administrative hearing and heard the testimony regarding these limitations, the diagnoses, the symptoms, the limitations in concentration, and the assigned RFC, so the vocational expert was aware of the limitations when offering her opinion about available work.

Upon review of the ALJ's decision and the record, including the administrative hearing transcript, the Court determines that the ALJ's hypothetical questions presented to the vocational expert were sufficient to account for Manifold's limitations, including her limitations in concentration, persistence, and pace. The ALJ considered the entire record, not just selective portions favorable to his decision. The ALJ properly weighed the record evidence, gave sufficient reasons for the weight given, accounted for limitations in the RFC determination, and then adequately addressed the limitations when questioning the vocational expert. This is particularly true where the ALJ essentially adopted Dr. Unversaw's RFC opinion, and the vocational expert was present to hear all the testimony regarding Manifold's limitations. There is substantial evidence to support the ALJ's Step Five determination as well as substantial evidence to support

the ALJ's entire decision.   Therefore, Manifold's first basis for seeking remand of the ALJ's decision is unavailing.

**B.      The ALJ Sufficiently Considered Manifold's Unstable Work History**

As a second reason for seeking remand, Manifold asserts that the ALJ did not take into account her unstable work history when he found that she was not disabled.  Manifold asserts that the ALJ should have considered her prior, failed work attempts as being an indication that she could not perform any other work in the economy.  Manifold argues that the ALJ provided no discussion of her past work history in his decision.  However, she acknowledges that the ALJ properly found that she had no past relevant work.

Manifold, relying on cases from other circuits, argues that simply being employed does not mean that a claimant has engaged in substantial gainful activity or that a claimant is capable of maintaining substantial gainful activity.  *See Gatliff v. Commissioner of the SSA*, 172 F.3d 690 (9th Cir. 1999).  She also asserts that being employed is not proof that a claimant can work, and a person can be entitled to disability even if they are working.

The Commissioner responds that the ALJ's findings regarding Manifold's work history are consistent with the evidence and are not inconsistent with Manifold's argument before this Court. The Commissioner asserts that the ALJ did not find that Manifold's past work was proof of her ability to work.  In fact, the ALJ found that none of Manifold's past jobs rose to the level of substantial gainful activity.

Upon review of the ALJ's decision and the record, the Court determines that the ALJ correctly found that Manifold had no past relevant work and had not engaged in substantial gainful activity.  Thus, at Step Four of the disability determination, the ALJ provided no discussion regarding past work because Manifold had none—a finding favorable to Manifold—and

immediately went to Step Five of the disability determination. The cases from other circuits on which Manifold relies appear to support the principle that having past employment does not necessarily lead to the conclusion that a claimant is capable of maintaining substantial gainful activity. However, those non-binding opinions do not require the converse—that not having past relevant work necessarily leads to the conclusion that a claimant is incapable of maintaining substantial gainful activity. The ALJ's finding that Manifold is capable of performing work that exists in the economy is supported by the testimony of the vocational expert, and thus, is supported by substantial evidence. Therefore, Manifold's second reason for remand also is unavailing.

## V.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Manifold's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 7/7/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov